ADAM L. BRAVERMAN
United States Attorney
BRUCE C. SMITH
Assistant U.S. Attorney
California State Bar No. 078225
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-8266
E-mail: bruce.smith@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. **'18CV2614 BEN BGS** |
|---|---|
| Plaintiff, | COMPLAINT FOR FORFEITURE |
| v. | |
| $802,700.00 IN U.S. CURRENCY, | |
| Defendant. | |

By way of complaint against the defendant, $802,700.00 IN U.S. CURRENCY ("$802,700 in currency"), plaintiff UNITED STATES OF AMERICA alleges:

1. This Court has jurisdiction over this action by virtue of the provisions of Title 28, United States Code, Section 1355, and Title 21, United States Code, Section 881(a)(6), because the defendant $802,700 in currency constitutes money or personal property furnished or intended to be furnished in exchange for controlled substances, or proceeds traceable to an exchange for controlled substances in violation of Chapter 13 of Title 21, United States Code.

2. Furthermore, this Court has jurisdiction over this action by virtue of the provisions of Title 28, United States Code, Section 1355(a), and Title 31, United States Code, Sections 5332(c) and because the defendant $802,700 in currency constitutes property involved in a violation of Title 31, United States Code, Section 5332(a), attempted bulk cash smuggling.

USAO: 2018v00347:BCS/bfs

3. Venue is proper in this district pursuant to Title 28, United States Code, Section 1395 because the defendant $802,700 in currency was found in this district.

4. On May 24, 2018 at approximately 6:00 p.m., in the Southern District of California, at the San Ysidro Port of Entry ("POE") Alejandro Perez ("Perez") entered the United States from Mexico as the driver and sole occupant of a grey 2007 Chevrolet Suburban SUV bearing California license plate number 5XAB195 ("2007 Chevrolet Suburban SUV").

    A. Perez was the registered owner of the 2007 Chevrolet Suburban SUV.

    B. When Perez arrived in the vehicle pre-primary area, a U.S. Customs And Border Protection ("CBP") Canine Enforcement Officer ("CEO") and his assigned CBP controlled substance detection dog were patrolling the area.

    C. The CBP controlled substances detection dog alerted to the 2007 Chevrolet Suburban, indicating to the trained and experienced CEO that it detected the scent or aroma of one or more controlled substances emanating from or upon the vehicle.

    D. The CBP CEO told a CBP officer in the vehicle primary area of the alert, and directed Perez and the 2007 Chevrolet Suburban SUV into the nearby vehicle secondary area for a more thorough inspection.

    E. In the vehicle secondary area, Perez was separated from the 2007 Chevrolet Suburban while the vehicle was examined.

    F. CBP officers in the vehicle secondary area pulled back a portion of floor carpet inside the 2007 Chevrolet Suburban SUV, and discovered an after-market, non factory-installed hatch or hinged access panel installed directly over the fuel tank sender unit.

    G. By virtue of the location and size of the after-market, non-factory installed hatch, when opened, it offered direct access to a removable panel on the top of the fuel tank.

    H. The trained and experienced CBP officers knew criminals frequently
//

used vehicle fuel tanks to hide and conceal contraband and bulk cash when smuggling those items in or out of the United States.

  I. The trained and experienced CBP officers quickly determined the fuel tank of the 2007 Chevrolet Suburban SUV held no contraband or foreign objects

  J. The CBP officers re-sealed the fuel tank, closed the smuggling hatch, returned the carpet to its original position, and sent Perez and the 2007 Chevrolet Suburban SUV on their way north.

  K. The inspection of the 2007 Chevrolet Suburban SUV was conducted in a way that did not alert Perez to the CBP officers' discovery.

  L. Meanwhile, the CBP officers entered their discovery of the smuggling compartment access hatch, its description, and location in the 2007 Chevrolet Suburban SUV into law enforcement records. The 2007 Chevrolet Suburban SUV was identified as a suspected smuggling vehicle.

5. During all relevant times herein, Perez, a United States citizen born in 1990, resided in Compton, in the Central District of California.

6. During the approximate six (6) month period leading up to July 4, 2018, Perez entered the United States from Mexico approximately 17 times at ports of entry in the Southern District of California.

  A. In each of the approximate 17 POE crossings, Perez was the driver of the 2007 Chevrolet Suburban SUV.

7. During the approximate 18 month period leading up to July 4, 2018, Perez entered the United States from Mexico approximately 78 times at ports of entry in the Southern District of California.

8. On July 4, 2018, in the Southern District of California, United States Border Patrol ("USBP") Agent Perez was in uniform, operating a marked USBP vehicle, and engaged in highway traffic check duties along Interstate Highway 15 ("I-15").

9. Agent Perez, among other things, conducted targeted enforcement and anti-smuggling operations within the Murrieta, California USBP Station area of responsibility.

   A. Agent Perez routinely conducted enforcement duties along I-15, as it was well-known as a corridor used by criminals engaged in the smuggling and transportation of undocumented immigrants, controlled substances, and currency generated by those illegal activities.

   B. The area patrolled that day by Agent Perez is located roughly 70 miles north of the international border between the United States and Mexico.

   C. USBP Agent Perez was trained and had experience in highway smuggling interdiction operations, and was familiar with smuggling trends and techniques.

   D. Agent Perez was sensitive to and observant of common or typical behaviors of individuals engaged in the transportation of undocumented migrants, controlled substances, and currency generated by those illegal enterprises.

   E. Agent Perez had a history of successfully detecting and intercepting vehicles engaged in transporting undocumented migrants, controlled substances, and currency generated by those illegal enterprises.

  10. USBP Agent Perez was trained and experienced, and knew the northbound lanes of the I-15 Highway, between the United States / Mexico international border and the Central District of California, was a stretch of highway frequently relied upon by northbound smugglers of illegal controlled substances and undocumented immigrants.

  11. USBP Agent Perez was trained and experienced, and knew the southbound lanes of the I-15 Highway, between the Central District of California and the United States/Mexico international border, was a stretch of highway frequently relied upon by transporters and smugglers of proceeds, in the form of U.S. currency and other monetary instruments, from the sale and distribution of illegal controlled substances and from fees paid for the smuggling and transportation of undocumented immigrants.

  12. USBP Agent Perez knew individuals and organized criminal groups smuggled illegal controlled substances and undocumented immigrants from Mexico into the Southern District of California.

//

13. USBP Agent Perez knew the illegal controlled substances were also transported to the Central District of California for distribution and sale.

    A. USBP Agent Perez knew the sale of illegal controlled substances was virtually always conducted as an exchange of drugs for money.

14. USBP Agent Perez knew smuggled undocumented immigrants were frequently transported to the Central District of California.

    A. USBP Agent Perez knew upon delivery to the Central District of California, the smuggled undocumented immigrants or their relatives paid the smugglers and transporters with money.

15. On July 4, 2018 at approximately 8:55 a.m., in the Southern District of California, USBP Agent Perez was in his assigned marked USBP vehicle, travelling southbound on the I-15, near Rainbow, California.

    A. Agent Perez received a service radio broadcast from USBP Murrieta Dispatch, directing him to be on the look out for the 2007 Chevrolet Suburban SUV.

    B. The USBP broadcast alerted Agent Perez the 2007 Chevrolet Suburban SUV, a suspected contraband smuggling vehicle, was travelling southbound on the I-15, and was approaching his position.

    C. Immediately after receiving the USBP broadcast, from his position in lane number three (3), Agent Perez observed the approaching 2007 Chevrolet Suburban SUV southbound in lane number one (1).

16. As the 2007 Chevrolet Suburban SUV came alongside Agent Perez' marked USBP vehicle, the driver of the 2007 Chevrolet Suburban SUV, later identified as Alejandro Perez, suddenly reduced the speed of the vehicle.

    A. Agent Perez recognized Alejandro Perez' sudden reduction in speed as a behavior common for drivers engaged in criminal conduct.

    B. Most drivers know USBP agents do not issue traffic citations for Vehicle Code violations such as speeding.

//

17. Agent Perez positioned his marked USBP vehicle in lane number two (2), and drove alongside Alejandro Perez and the 2007 Chevrolet Suburban SUV.

 A. As Agent Perez paced Alejandro Perez and the 2007 Chevrolet Suburban SUV, Agent Perez noticed Alejandro Perez displayed a series of behaviors or actions which, in Agent Perez' training and experience, were indicative of a driver experiencing unreasonably elevated levels of anxiety or nervousness.

18. Agent Perez maneuvered his marked USBP vehicle from the number two (2) lane to the number one (1) lane, and took a position at a safe distance, directly behind Alejandro Perez and the 2007 Chevrolet Suburban SUV.

 A. As Agent Perez entered the number one (1) lane, Alejandro Perez suddenly and abruptly exited the number one (1) lane, and entered the number two (2) lane, thereby positioning the 2007 Chevrolet Suburban SUV into a very small and unsafe open space between two (2) other vehicles in the number two (2) lane.

 B. Alejandro Perez' lane change was as dangerous a maneuver as it was unnecessary, as no vehicles were in front of the 2007 Chevrolet Suburban SUV in the number one (1) lane.

19. Agent Perez notified fellow USBP Agents Hagen and Pinones, also in a marked USBP vehicle at a position on the I-15 Highway south of Agent Perez, and directed them to position their marked USBP vehicle in a highly visible place alongside the southbound lanes of the I-15 Highway.

 A. USBP Agents Hagen and Pinones took a position in their marked USBP vehicle alongside the southbound lanes of the I-15 Highway, south of the Old Highway 395 Bridge.

 B. As Alejandro Perez and the 2007 Chevrolet Suburban SUV came within sight of USBP Agents Hagen and Pinones in the marked USBP vehicle, Alejandro Perez tapped the brakes of the 2007 Chevrolet Suburban SUV several times.

 C. Based upon his training and experience, Agent Perez recognized driver

//

6

Alejandro Perez' behavior as another display of his unreasonably elevated levels of anxiety or nervousness.

  D. Meanwhile, Agent Perez was aware of the May 24, 2018 event at the San Ysidro POE when the 2007 Chevrolet Suburban SUV was identified as a smuggling vehicle.

20. Based upon the totality of his observations, the government records check, his training and experience, USBP Agent Perez suspected the 2007 Chevrolet Suburban SUV was being used as a smuggling conveyance or was otherwise used to facilitate illegal conduct.

  A. Agent Perez initiated a vehicle stop of the 2007 Chevrolet Suburban SUV at approximately 9:00 a.m. near the Gopher Canyon exit on southbound I-15, near the City of Bonsall.

21. Agent Perez approached the 2007 Chevrolet Suburban SUV on foot, stood next to the vehicle, and identified himself to Alejandro Perez, the driver and sole occupant, as a USBP agent.

  A. Alejandro Perez declared himself a United States citizen.

  B. Alejandro Perez told Agent Perez he had no undocumented migrants or contraband aboard the vehicle.

  C. Alejandro Perez granted Agent Perez permission to inspect the interior of the 2007 Chevrolet Suburban SUV and its contents.

22. USBP Aguayo and his trained and certified USBP controlled substance detection canine, "Rocco" arrived at the site of the enforcement stop.

23. Alejandro Perez granted permission to Agent Aguayo to use Rocco to sniff or examine the 2007 Chevrolet Suburban sedan.

24. USBP Agent Aguayo used Rocco to conduct an examination of the 2007 Chevrolet Suburban SUV.

  A. Agent Aguayo and Rocco were trained to work as a team.

//

B. Rocco was trained to display behaviors or alert when he detected the smells or aromas of various controlled substances.

C. Agent Aguayo was trained and experienced working with Rocco, and was familiar with Rocco's behaviors or alerts when Rocco detected illegal drugs.

D. Rocco alerted to the front undercarriage of the 2007 Chevrolet Suburban sedan, continued to trace scents to the rear of the vehicle, and ultimately sat down near the rear driver side tire and wheel well.

E. Agent Aguayo advised Agent Perez his drug detection dog behaved in a way that indicated it encountered scents or odors associated with controlled substances about the 2007 Chevrolet Suburban SUV, especially in the area of the rear driver side tire and wheel well.

25. Alejandro Perez again expressed permission to the USBP agents to conduct a search of the 2007 Chevrolet Suburban SUV and its interior spaces.

A. During the search, Agent Aguayo located a large amount of U.S. currency wrapped in cellophane bundles, concealed inside the driver side rear quarter panel of the 2007 Chevrolet Suburban SUV.

26. Alejandro Perez and the 2007 Chevrolet Suburban SUV were transported to the USBP Murrieta station.

27. Later that day, at the USBP Murrieta station, law enforcement personnel opened the hatch or hinged access panel in the floor, just over the fuel tank in the 2007 Chevrolet Suburban SUV.

A. The hatch or hinged access panel in the floor was the same one discovered on May 24, 2018 at the San Ysidro POE by the CBP officers.

B. Law enforcement personnel opened the hatch, and removed the factory-installed access panel on the top of the fuel tank.

C. Inside the fuel tank, law enforcement personnel discovered and extracted a long plastic-wrapped tube containing multiple vacuum-sealed, plastic-wrapped bundles of U.S. currency.

28. U.S. Homeland Security Investigations ("HSI") Agent Harris was summoned to the USBP Murrieta station, and took over the investigation of Alejandro Perez.

    A. Agent Harris advised Alejandro Perez, among other things, the currency discovered aboard the 2007 Chevrolet Suburban SUV was being seized for forfeiture to the United States.

29. At the USBP Murrieta station, Alejandro Perez signed a U.S. Department Of Homeland Security "Notice Of Abandonment And Assent To Forfeiture Of Prohibited Or Seized Merchandise" form.

    A. The "Abandoned Merchandise" identified on the form is "U.S. Currency (2 boxes uncounted)."

    B. On the form, above Alejandro Perez' name and signature, the pre-printed message reads, "I hereby abandon all claims to the above-described merchandise, and waive any further rights or proceedings relative to these articles."

30. Based upon his training and experience, the facts and circumstances leading up to the discovery and seizure of the U.S. currency found by the USBP agents in the 2007 Chevrolet Suburban SUV, and Alejandro Perez' abandonment of the currency, Agent Harris knew, when contacted by the USBP agents earlier that day on the highway, Alejandro Perez was acting on behalf of a criminal drug trafficking group as a drug sale proceeds courier and bulk cash smuggler.

    A. When encountered by the USBP agents, Alejandro Perez was transporting the concealed U.S. currency from a location north of the Southern District of California, out of the United States, and into Mexico.

    B. The U.S. currency discovered aboard the 2007 Chevrolet Suburban SUV was hidden and concealed to evade detection by U.S. border guards, and to facilitate its covert transportation and undetected delivery to a location in Mexico.

31. The U.S. currency found aboard the 2007 Chevrolet Suburban SUV was gathered together and counted.

    A. The grand total was $802,700.00 in U.S. currency.

9

B. The $802,700.00 in U.S. currency seized from inside the 2007 Chevrolet Suburban SUV is the defendant $802,700 in currency.

32. An HSI agent submitted and caused to be submitted some of the vacuum-sealed bags and plastic material in which the defendant $802,700 in currency was packaged to a DHS / CBP laboratory and scientific services unit for a latent fingerprint examination.

   A. A trained and experienced DHS laboratory technician, using scientifically-appropriate methods, equipment, and techniques examined the currency packaging material for latent fingerprints.

   B. The DHS laboratory technician discovered a number of usable latent fingerprints upon the currency packaging materials.

   C. The DHS laboratory technician compared the usable latent fingerprints to known fingerprints on file with various U.S. national law enforcement data bases.

   D. Some of the latent fingerprints discovered on the currency packaging materials were identified to the right thumb and left index finger of Alejandro Perez.

   E. The findings of the DHS laboratory technician indicated to the investigating HSI agents that at some point in time before he was encountered on the I-15 Highway by the USBP agents, Alejandro Perez handled the defendant $802,700 in currency.

33. The defendant $802,700 in currency was seized for forfeiture to the United States as proceeds from the sale and distribution of controlled substances, and as property involved in a violation of Title 31, United States Code, Section 5332, attempted bulk cash smuggling.

34. On October 31, 2018, in the Southern District of California, a Federal Grand Jury panel handed up a single-count indictment in the matter of United States of America v. Alejandro Perez, case number 18cr4667-W, thereby charging Alejandro Perez with a violation of Title 31, United States Code, Sections 5332(a) and (b), attempted bulk cash smuggling, a felony.

   A. The defendant $802,700.00 in U.S. currency and the 2007 Chevrolet

Suburban SUV are alleged in the indictment for criminal forfeiture as property involved in a violation of Title 31, United States Code, Sections 5332(a) and (b), attempted bulk cash smuggling.

Count 1

($802,700.00 in U.S. Currency)

35. Paragraphs 1 through 34 are hereby incorporated herein as if alleged in full.

36. The defendant $802,700.00 in U.S. Currency was money furnished or intended to be furnished in exchange for a controlled substance, in violation of Chapter 13, Title 21, United States Code.

37. Alternatively, the defendant $802,700.00 in U.S. Currency was proceeds of or proceeds traceable to an exchange for a controlled substance, in violation of Chapter 13, Title 21, United States Code.

38. Alternatively, the defendant $802,700.00 in U.S. Currency was used or intended to be used to facilitate an exchange for a controlled substance, in violation of Chapter 13, Title 21, United States Code.

39. As a result of the foregoing, the defendant $802,700.00 in U.S. Currency is liable to condemnation and to forfeiture to the United States for its use in accordance with Title 21, United States Code, Section 881(a)(6).

40. The defendant $802,700.00 in U.S. Currency is presently deposited within the jurisdiction of this Court.

Count 2

($802,700.00 in U.S. Currency)

41. Paragraphs 1 through 34 are hereby incorporated herein as if alleged in full.

42. The defendant $802,700.00 in U.S. currency constitutes more than $10,000 in currency or monetary instruments knowingly concealed in a conveyance, article of luggage, or other container, and attempted to be transported from a place inside the United States to a place outside thereof, to wit: the Republic of Mexico, by a person with

//

the intent to evade a currency reporting requirement under Title 31, United States Code, Section 5316, in violation of Title 31, United States Code, Section 5332.

43. As a result of the foregoing, the defendant $802,700.00 in U.S. currency is liable to condemnation and to forfeiture to the United States for its use in accordance with Title 31, United States Code, Section 5332(c).

44. The defendant $802,700.00 in U.S. Currency is presently deposited within the jurisdiction of this Court.

WHEREFORE, the United States prays that due process issue to enforce the forfeiture of the defendant $802,700.00 in U.S. Currency and that due notice be given to all interested parties to appear and show cause why said forfeiture should not be declared.

DATED: November 15, 2018

>ADAM L. BRAVERMAN
>United States Attorney
>
>s/ Bruce C. Smith
>
>BRUCE C. SMITH
>Assistant United States Attorney
>Attorneys for Plaintiff
>United States of America
>Email: bruce.smith@usdoj.gov

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
United States of America

## DEFENDANTS
$802,700.00 in U.S. Currency

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
AUSA Bruce C. Smith, Phone: (619) 546-8266
USAO, 880 Front Street, Room 6293, San Diego, CA 92101-8893

Attorneys (If Known)
'18CV2614 BEN BGS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

[X] 1 U.S. Government Plaintiff
[ ] 2 U.S. Government Defendant
[ ] 3 Federal Question (U.S. Government Not a Party)
[ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 362 Personal Injury - Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / [ ] 365 Personal Injury - Product Liability | [X] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander / [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine / **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability / [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle / [ ] 371 Truth in Lending | [ ] 690 Other | | [ ] 490 Cable/Sat TV |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability / [ ] 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | [ ] 810 Selective Service |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury / [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/Exchange |
| [ ] 195 Contract Product Liability | | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 196 Franchise | | [ ] 730 Labor/Mgmt.Reporting & Disclosure Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 441 Voting / [ ] 510 Motions to Vacate Sentence | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 892 Economic Stabilization Act |
| [ ] 220 Foreclosure | [ ] 442 Employment / **Habeas Corpus:** | [ ] 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/Accommodations / [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 894 Energy Allocation Act |
| [ ] 240 Torts to Land | [ ] 444 Welfare / [ ] 535 Death Penalty | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 895 Freedom of Information Act |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment / [ ] 540 Mandamus & Other | **IMMIGRATION** | | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other / [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 440 Other Civil Rights / [ ] 555 Prison Condition | [ ] 463 Habeas Corpus - Alien Detainee | | |
| | | [ ] 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)
[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from another district (specify)
[ ] 6 Multidistrict Litigation
[ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
21 U.S.C. Section 881
Brief description of cause:
Narcotics trafficking

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE: 11/15/2018
SIGNATURE OF ATTORNEY OF RECORD: s/ Bruce C. Smith

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# VERIFICATION

I, Nicole Caughey, state and declare as follows:

1. I am a Special Agent with U.S. Homeland Security Investigations, and am one of the agents assigned to this investigation.

2. I have read the foregoing Complaint For Forfeiture and know its contents.

3. The facts set forth in the Complaint For Forfeiture are based upon my own knowledge or were facts furnished to me by other United States federal, state, or local law enforcement personnel, civilian witnesses, or other official Government sources.

Based on this information, I believe the allegations in the Complaint For Forfeiture to be true.

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge and belief.

Executed on November 15, 2018.

_____
NICOLE CAUGHEY, SPECIAL AGENT
U.S. HOMELAND SECURITY INVESTIGATIONS